Allen J. Wilt, Esq. (NSB 4798)
*awilt@lionelsawyer.com*
Jordan A. Davis, Esq. (NSB 12196)
jadavis@lionelsawyer.com
LIONEL SAWYER & COLLINS
1100 Bank of America Plaza
50 W. Liberty Street
Reno, Nevada 89501
(775) 788-8666 (Telephone)
(775) 788-8682 (Fax)

TERRY ROSS, CASB No. 58171
terry.ross@kyl.com
TARA B. VOSS, CASB No. 261967
tara.voss@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California  90801-1730
Telephone:  (562) 436-2000
Facsimile:    (562) 436-7416
*(Pro hac vice to be filed)*

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JACOBS FIELD SERVICES NORTH AMERICA, INC., <br><br>              Plaintiff <br>v. <br><br>HYCROFT RESOURCES & DEVELOPMENT, INC., <br><br>              Defendant | Case No. <br><br>**COMPLAINT** |

Plaintiff, Jacobs Field Services North America, Inc. ("Jacobs") for its Complaint against Defendant Hycroft Resources & Development, Inc. ("Hycroft"), alleges as follows:

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

**JURISDICTION**

1. Jacobs is a corporation organized under the laws of the State of Texas with its principal place of business in Houston, Texas. Jacobs is now, and at all times mentioned in this complaint was, a licensed contractor, Nevada License Number 0056475.

2. Jacobs is informed and believes that Hycroft is and at all material times was, a corporation organized under the laws of the State of Nevada with its principal place of business in Reno, Nevada.

3. Jacobs is informed and believes and thereupon alleges, that there may be additional defendants legally responsible for the events and happenings hereinafter described. Jacobs will seek leave of Court to show the true names and capacities of those defendants, when the same have been ascertained.

4. By this action, Jacobs seeks to foreclose on mechanics' liens totaling nine million, five hundred and six thousand and fifty one dollars and seventy six cents ($9,506,051.76) and to recover punitive damages, restitution, the reasonable value of services, interest, costs and attorneys' fees.

5. This Court has original jurisdiction over Jacobs' claims based on diversity of citizenship pursuant to 28 U.S.C. § 1332, in that the action arises between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," as more specifically descried below. (28 U.S.C. § 1391(a)(2).)

**GENERAL ALLEGATIONS**

**A.   THE PROJECT.**

7. Hycroft owns and operates a gold mine approximately fifty-five (55) miles northwest of Winnemucca, Nevada (the "Hycroft Mine"). Hycroft developed a plan to expand the ore production capabilities at the Hycroft Mine. As part of that ongoing expansion project, Hycroft sought to construct a new Merrill Crowe system. Hycroft hired Jacobs to perform a subset of the construction work, namely to install the Merrill Crowe equipment and erect the steel necessary to

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666


construct a building surrounding the Merrill Crow system. (Hereinafter the "Project" or the "Merrill Crowe Project.")

8. Jacobs supplied labor and materials and improved the real property that is the subject of this action, namely the Merrill Crowe Facility – Hycroft Mine, located in Humboldt County, Nevada, Assessor's Parcel Numbers 001-601-01, 001-601-02, 001-601-03, 001-601-04, 001-601-06, 001-601-08, 001-601-09, 001-601-10, 001-611-08, 001-611-11, and 001-561-001 as well as in Pershing County, Nevada, Assessor's Parcel Number 002-061-04.

### B. THE REQUEST FOR QUOTATION, PROPOSAL AND ADDENDUM.

9. On February 10, 2013, Hycroft prepared a Request for Quotation ("RFQ") for the installation of its new Merrill Crowe system. The RFQ described the scope of the Project, contact information, safety summary, Project administration and control, insurance requirements summary, bid submittal, terms and conditions, award information, confidentiality, ethics, specifications, and drawings.

10. In the RFQ, Hycroft expressly assumed responsibility for a significant portion of the Project's overall scope of work. Hycroft represented that it would timely perform its scope and timely supply the winning bidder with the equipment and materials necessary for those bidders to perform their scope of work.

11. On March 11, 2013, Jacobs responded to the RFQ with its Proposal. The Proposal provided an executive summary and approach, health, safety and environmental section, described Jacobs' experience and organization, construction execution, Project controls, material control, quality assurance/quality control, commercial approach, and technical qualifications.

12. Jacobs relied on the representations and promises made by Hycroft in its RFQ in the preparation of the Proposal. It was evident that Jacobs relied on Hycroft's representation that it would timely complete all necessary preconditions required for Jacobs to begin and timely complete its scope of work.

13. Jacobs expected and relied upon Hycroft and its other contractors to work together to create a detailed work schedule covering design, procurement, and construction. Those detailed schedules were to specifically identify critical tasks to avoid conflicts and interferences among the various parties.

14. On March 21, 2013, Jacobs met with Hycroft to discuss and clarify the RFQ and Jacobs' Proposal.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

3

15. On April 8, 2013, Jacobs submitted an Addendum to its Proposal based on representations and commitments made in the meeting by Hycroft about new dates for the completion of design deliverables and delivery of materials and equipment necessary for Jacobs to do its work.

16. Jacobs' Addendum reflected Jacobs' further reliance upon Hycroft's promises and commitments and adjusted the schedule for its work accordingly.

17. Hycroft and its other contractors failed to meet the original dates or the new dates and adversely affected Jacobs' ability to complete its scope of work on time or within its estimate.

C. **THE GENERAL SERVICES AGREEMENT AND RELEVANT WORK ORDERS.**

18. On April 29, 2013, Hycroft and Jacobs entered into General Services Agreement Number ANV-JAC-AGR-035 (the "GSA"), whereby Jacobs agreed to perform the services specified therein and in any Work Order thereto and Hycroft agreed to compensate Jacobs for services rendered.

19. On May 3, 2013, Hycroft issued Work Order JAC-W/O-001 ("Work Order One") to Jacobs.

20. Pursuant to Work Order One, Jacobs agreed to provide certain labor and services in connection with the construction of the Merrill Crowe Facility and installation of pumps and piping in connection with it. In exchange, Hycroft agreed to reimburse Jacobs for the cost of labor, materials, equipment, etc. with a markup that represented Jacobs' fee for services rendered.

21. On June 27, 2013, Hycroft issued Work Order JAC-W/O-004 ("Work Order Four") for the erection of the steel for the Merrill Crowe building. (Together Work Order One and Work Order Four are referred to as the "Work Orders.")

22. The Work Orders reiterated Hycroft's responsibility to supply numerous deliverables and critical items.

23. By way of example only, Work Order One provided that Hycroft would provide all engineering, concrete, process equipment, instrumentation and control devices, tanks, all pipe materials 2-1/2 inches and over, engineered pipe supports, modules, buildings, electrical e-house rooms and equipment packages (*See e.g.,* Work Order One, Section (A)(2) "Hycroft-provided Materials, Supplies, and Equipment" and Paragraphs 1.1.1, 1.1.2, 3.1.1, 3.1.2, 3.1.4, 3.1.5, 3.1.7, 3.1.8, & 4.1.)

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

4

24.     By way of further example, Work Order Four provided that Hycroft was responsible to supply all engineering, materials, and structural steel fabrication. (*See* Work Order Four, Section (A)(2).)

25.     Jacobs relied on Hycroft's assurances that it would provide the deliverables timely and as promised, so that Jacobs could perform its scope of services.

26.     Following the issuance of the Work Orders, and at Hycroft's express request, Jacobs furnished labor, services, materials and equipment for the improvement of the Merrill Crowe facility.

### D.   HYCROFT'S FAILURE TO TIMELY PAY FOR SERVICES RENDERED AND IMPROVEMENTS MADE.

27.     Jacobs invoiced Hycroft pursuant to the GSA and Work Orders; yet, Hycroft failed to pay Jacobs on a timely basis.

28.     To date, Hycroft has failed to pay Jacobs nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76):

| Inv # | Date | Amount | Due | Paid | |
|---|---|---|---|---|---|
| 157-7537 | 6/6/2013 | 171,413.77 | 7/6/2013 | 7/31/2013 | Labor through 5/26/2013 |
| 157-7554 | 6/26/2013 | 295,111.58 | 7/26/2013 | 7/31/2013 | Labor through 6/09/2013 |
| 157-7558 | 7/8/2013 | 501,078.06 | 8/8/2013 | 8/26/2013 | Labor through 6/23/2013 |
| 157-7571 | 7/25/2013 | 172,695.56 | 8/25/2013 | 9/3/2013 | Non-Labor Jun |
| 157-7572 | 7/26/2013 | 772,417.77 | 8/26/2013 | 8/29/2013 | Labor through 7/07/2013 |
| 157-7578 | 8/7/2013 | 1,158,529.50 | 9/7/2013 | Not paid | Labor through 7/21/2013 |
| 157-7583 | 8/14/2013 | 224,005.58 | 9/14/2013 | 10/3/2013 | Non-Labor Jul |
| 157-7586 | 8/16/2013 | 1,622,167.67 | 9/16/2013 | Not paid | Labor through 8/4/2013 |
| 157-7595 | 8/26/2013 | 1,772,810.00 | 11/31/13 | Not paid | Labor through 8/18/2013 |
| 157-7601 | 9/9/2013 | 849,470.20 | 11/31/13 | Not paid | Labor through 8/30/2013 |
| 157-7603 | 9/13/2013 | 493,814.56 | 11/31/13 | 10/3/2013 | Non-Labor Aug |
| 157-7616 | 10/9/2013 | 233,004.66 | 11/31/13 | Not paid | Final Labor through 9/27/2013 |
| 157-7620 | 10/14/2013 | 1,943,879.01 | 11/31/13 | Not paid | Non-Labor Sep & thru Oct 4 |
| 157-7622 | 10/22/2013 | 3,244,256.39 | 11/31/13 | Not paid | Non-Labor Oct 5 thru 11 |
| 157-7628 | 10/31/2013 | 1,164,655.98 | 11/31/13 | Not paid | Non-Labor Final – This Invoice |
| Misc Invoice Credits | | -2,959.34 | **Percent** | | |
| **Total Invoiced: $** | | **14,614,672.98** | **100%** | | |
| **Paid: $** | | **5,108,621.22** | **35%** | | |
| **Total Unpaid: $** | | **9,506,051.76** | **65%** | | |

29.     On August 21, 2013, Hycroft terminated the Work Orders for convenience upon 15 days' notice without further explanation.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

30. Pursuant to GSA Paragraph 20(D), Jacobs submitted a final "Termination Invoice" to Hycroft. As with the other invoices described above, Hycroft refused to pay any portion of that invoice.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

31. Jacobs hereby incorporates paragraphs 1 through 30 as if fully set forth herein.

32. Jacobs and Hycroft entered into a valid and existing contract.

33. At all times herein, Jacobs performed and completed all conditions, covenants and promises to be performed under the GSA and Work Orders, except as excused, hindered, or prevented by Hycroft.

34. Jacobs has appropriately invoiced Hycroft for $14,616,350.95 in labor, services and material costs. To date, Hycroft has paid only $5,108,621.22.

35. Under the terms of the GSA (including, but not limited to, Clause 3 "Compensation and Payment"), Work Order One (including, but not limited to, Section D "Payments") and Work Order Four (including, but not limited to, Section D "Payments") Hycroft had an obligation to pay Jacobs for all invoiced amounts upon net 30-day terms following receipt by Hycroft of a correct invoice.

36. Hycroft failed to pay Jacobs pursuant to the requirements set forth in the GSA and Work Orders.

37. Pursuant to the GSA and Work Orders, Hycroft also had an obligation to supply deliverables to Jacobs. (*See e.g.*, Work Order One, Section A(2) and Work Order Four, Section A(2).)

38. In addition to its failure to timely pay Jacobs as required by contract, Hycroft breached the GSA and Work Orders in numerous respects, including but not limited to:

    a. Hycroft failed to timely reimburse Jacobs for its materials and labor costs;

    b. Hycroft failed to approve time extensions;

    c. Hycroft knowingly and without justification withheld its approval of Change Orders;

    d. Hycroft expressly authorized, requested and ordered Jacobs to perform additional work, employ additional labor, incur additional costs, and to "ramp up" work efforts, but refused to execute the corresponding Change Orders and/or to pay for the work so provided;

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

6

e. Hycroft and/or its engineering subcontractor, failed to supply timely and complete engineering drawings;

f. When the engineering drawings were provided, there were numerous errors and conflicts, which resulted in rework that fell outside of Jacobs' scope of work, increased costs and delays;

g. Jacobs was not provided with a schedule of engineering deliverables;

h. Hycroft and/or its concrete subcontractor failed to complete the foundation work on time, delaying Jacobs work and resulting in increased costs;

i. Hycroft failed to timely supply steel to the Merrill Crowe Project (indeed, the last steel deliverables were being made in September), resulting in increased costs and delays;

j. Hycroft failed to procure equipment when promised, thereby causing significant Project delay and increased cost;

k. Hycroft's contractor failed to timely supply pipe modules resulting in increased costs and delays;

l. Hycroft's contractor failed to timely supply pipe spools resulting in increased costs and delays;

m. Hycroft's contractor failed to timely complete construction of critical tanks (indeed, the tanks were not complete at the time Jacobs left the job site), resulting in increased costs and delays;

n. Hycroft made numerous changes in scope resulting in increased costs and delays; and,

o. The cable trays were not timely delivered resulting in increased costs and delays.

39. As a direct and proximate result of Hycroft's material contractual breaches, Jacobs has suffered damages of not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76),** constituting the amounts due and owing to it. In addition, Jacobs is entitled to an award of prejudgment interest, as well as costs, and attorneys' fees.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

7

40. Jacobs hereby incorporates paragraphs 1 through 39 as if fully set forth herein.

41. Jacobs and Hycroft were parties to a contract comprised of the GSA and Work Orders.

42. The GSA and Work Orders contain implied covenants of good faith and fair dealing.

43. Under the GSA and Work Orders, Hycroft owed a duty of good faith to Jacobs.

44. Hycroft breached the implied covenant of good faith and fair dealing in numerous respects, by performing in a manner that was unfaithful to the purpose of the contract, including but not limited to:

   a. Hycroft actively interfered with Jacobs' ability to perform its scope of work;

   b. Hycroft knowingly failed to supply the equipment, materials and design deliverables required for Jacobs to perform its scope of work;

   c. Hycroft knowingly and deliberately refused to pay Jacobs for the material and labor costs without justification or explanation;

   d. Hycroft knowingly and without justification withheld its approval of time extensions;

   e. Hycroft knowingly and without justification withheld its approval of Change Orders;

   f. Hycroft expressly and affirmatively directed Jacobs to undertake additional expenses, but then deliberately and willfully refused to approve any corresponding Change Orders and/or to pay for the work so provided.

45. In reliance on Hycroft's directions, instructions and representations Jacobs performed work and incurred considerable expenses; yet, Hycroft refused to pay Jacobs.

46. Hycroft's actions were deliberate and in contravention of the intention and spirit of the GSA and Work Orders, and have served to deprive Jacobs of its benefit.

47. Jacobs' justified expectations were thus denied.

48. As a direct and proximate result of Hycroft's material contractual breaches, Jacobs has suffered damages of not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76),** constituting the amounts due and owing to it. In addition, Jacobs is entitled to an award of prejudgment interest, as well as costs, and attorneys' fees.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

8

## THIRD CAUSE OF ACTION

### (Fraud in the Inducement/False Promise)

49. Jacobs hereby incorporates paragraphs 1 through 48 as if fully set forth herein.

50. On May 3, 2013, Hycroft awarded Jacobs its scope of the Project via Work Order One.

51. Work Order One contained representations that Hycroft would provide the timely and sequential flow of numerous engineering and related technical documents and all pertinent critical path materials and equipment necessary for Jacobs to perform its scope of work.

52. Work Order One specifically referenced and incorporated Hycroft's RFQ, Jacobs' Proposal, and the Addendum. Specifically, Work Order One reiterated that it was Hycroft's responsibility to supply numerous deliverables for the Project. Hycroft was required to timely provide:

    a. All engineering structural steel components (RFQ, Section 3.1.1).

    b. Concrete (RFQ, Sections 3.1.2 and 4.1).

    c. All process equipment shown on RFQ mechanical equipment list with MSHA Guarding (RFQ, Sections 3.1.4 and 4.1).

    d. Equipment and piping for dearation tower 80-DE-001 (RFQ, Section 3.1.4).

    e. All instrumentation and control devices (RFQ, Sections 3.1.4 and 3.1.8).

    f. Motors (RFQ, Section 3.1.4).

    g. Tanks (RFQ, Sections 3.l.4 and 4.1).

    h. All pipe materials 2-1/2 inches and over (RFQ, Sections 3.1.5 and 4.1).

    i. All piping materials 2-1/2 inches and over on pipe racks shipped to site already installed on the individual pipe rack modules.

    j. Engineered pipe supports (RFQ, Section 3.1.5).

    k. Supply and installation of leach field (RFQ, Section 3.1.7).

    l. Modules, buildings, electrical e-house rooms and equipment packages (RFQ, Sections 3.1.7 and 4.1).

53. On May 6, 2013, Jacobs mobilized to the site.

54. On May 6, 2013, Hycroft failed to furnish to Jacobs the deliverables promised at mobilization. Hycroft's failure to furnish the promised deliverables was systemic and continuous throughout the Project.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

55. At the time that Hycroft issued Work Order One, Hycroft knew or should have known that it was not able to supply the deliverables as promised. Yet, it induced Jacobs to consent to the terms therein.

56. As a direct and proximate result of Hycroft's false promises and misrepresentations, Jacobs experienced delays and incurred costs outside the scope of those contemplated by Jacobs' Proposal, Jacobs' Addendum and Work Order One.

57. Jacobs justifiability relied on Hycroft's representations in mobilizing to the site, and in performing work at the direction and instruction of Hycroft.

58. Due to Hycroft's failure to provide timely critical path engineering and procurement deliverables and the resulting delays and shortages, on or about July 8, 2013, Jacobs provided Hycroft with a draft Schedule Synopsis and two options for a "going forward" work plan. A final copy of the Schedule Synopsis was executed by Jacobs and sent to Hycroft on July 10, 2013.

59. Option One provided: "Ramp up with planned manpower immediately ensuring adequate manpower is readily available on site awaiting receipt of engineering and procurement deliverables as noted in option 2 below. Doing so could mitigate any delays in ramping up potentially gaining a couple of weeks on scheduled MC For both phases."

60. Option Two provided: "Delay ramp up until receipt of the most critical deliveries . . . ." The Schedule Synopsis expressly notified Hycroft that "with regard to option (1) above, involving premature ramp up of manpower based on promised and potentially unrealized ETA's can result in cost over runs."

61. On July 8, 2013, Jacobs asked Hycroft to select the option it wished to pursue and requested approval from Hycroft to incur the costs associated therewith, as the costs would be passed on to Hycroft under the terms of the GSA and Work Orders.

62. Jacobs told Hycroft it could not ramp up and incur the costs without Hycroft's authorization to do so.

63. On July 9, 2013, James Sullivan (of Hycroft) wrote to Gil Madrid and Robert Lewis (of Jacobs) and expressly directed Jacobs to ramp up the manpower per Option One of the July 10, 2013 Schedule Synopsis, as if all of the Hycroft promised deliverables were indeed on site: "Per our discussion this morning. We need you to increase your manpower as quick as possible as if all material will be on site and available to install. We will go and talk to Schmuesser on the modules tonight."

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

10

64. Jacobs reasonably relied on Hycroft's affirmative directive and false representations that it approved of the proposed ramp up in manpower and the additional expenses concurrent therewith.

65. Jacobs incurred significant expenses as a direct and proximate result of Hycroft's instructions.

66. By way of example, on July 16, 2013, Mr. Madrid (of Jacobs) wrote to Eric Kuwahara and Ed Miller (of Hycroft) with copies to others stating:

> Eric,
>
> The decision to seek additional welders via these three subject subcontractors is driven by a multitude of schedule impacts and delays that Jacobs has incurred since mobilization coupled with a directive from Owner to ramp up with manpower per option one of our letter dated July 0 2013 *Exhibit A Schedule Synopsis* per the attached. Thanks.
>
> regards
>
> gil

67. Hycroft had actual notice that Jacobs was incurring additional expenses at Hycroft's direction and election to proceed under Option One, by virtue of numerous facts including but not limited to, Jacobs direct communications, Hycroft's constant and physical presence at the job site, Hycroft's participation in daily meetings, Hycroft's receipt of the construction constraint lists, Hycroft's receipt of Jacobs' schedules (issued weekly, and then on a daily basis), Hycroft's receipt of trend notices, change orders and other change documents, Hycroft's receipt of numerous Requests for Information, Hycroft's meetings with Jacobs and other contractors, and progress meetings.

68. Hycroft withheld approval of the corresponding Change Orders and refused to pay Jacobs for the work performed pursuant to its instruction.

69. Given Hycroft's failure to pay the corresponding invoices, Jacobs understands and believes that Hycroft did not intend to pay Jacobs for the services, despite its instruction to the contrary.

70. As a direct and proximate result of Hycroft's false promises, Jacobs has suffered damages of not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76),** constituting the amounts due and owing to it.  In addition, Jacobs is entitled to an award of prejudgment interest, as well as costs, and attorneys' fees.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

11

71. Jacobs also seeks an award of exemplary damages of up to three times the amount of any award of compensatory damages based upon Hycroft's oppression, fraud and/or malice.

## FOURTH CAUSE OF ACTION

### (Quantum Meruit)

72. Jacobs hereby incorporates paragraphs 1-71 as if fully set forth herein.

73. Hycroft expressly authorized, requested and directed Jacobs to perform services, employ labor, incur costs, and to "ramp up" work efforts.

74. Hycroft was aware that Jacobs was performing services, employing labor, incurring costs and ramping up work efforts and manifested its consent to the same.

75. Hycroft refused to pay Jacobs for the services, labor, equipment and materials furnished by Jacobs.

76. Therefore, in the alternative to its contractual claims, Jacobs seeks the reasonable value of its services to be proved at trial, but in an amount not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

77. Jacobs hereby incorporates paragraphs 1 through 76 as if fully set forth herein.

78. Jacobs furnished labor, services, materials and equipment to improve the Merrill Crow Facility at the Hycroft Mine at the direction and instruction of Hycroft.

79. Hycroft was aware that Jacobs was incurring these expenses.

80. Hycroft has accepted and retained the benefit of Jacobs' labor, services, materials and equipment.

81. Hycroft has unreasonably withheld payment of the reasonable value of the services, labor, materials, and equipment furnished by Jacobs at Hycroft's direction and instruction.

82. Under the circumstances, it would be unjust and inequitable for Hycroft to retain the benefit of Jacobs' labor, services, materials and equipment without payment of the value thereof.

83. Therefore, Jacobs now seeks, in the alternative to its contractual claims, an award of restitution for the reasonable value of services rendered and for disgorgement of all profits gained by Hycroft, in amounts to be proven at trial, but in no event, less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

12

## SIXTH CAUSE OF ACTION

### (Cardinal Change)

84. Jacobs hereby incorporates paragraphs 1 through 83 as if fully set forth herein.

85. Following the issuance of the GSA and Work Orders, Hycroft directed Jacobs to perform work and incur expenses that were not contemplated within the general scope of the Work Orders. These included, but are not limited to, scope changes, increased labor costs, rework resulting from the errors, omissions and/or failures of Hycroft and/or its contractors, delays occasioned by Hycroft and/or its contractors, and a "ramp up" of Project completion.

86. Hycroft's material changes to the project and the magnitude of work to be performed by Jacobs, are so extensive as to exceed the confines of the GSA and Work Orders.

87. Hycroft was aware that Jacobs was incurring expenses not contemplated by the Work Orders.

88. Hycroft unreasonably withheld its approval of Change Orders to the contract value and schedule occasioned by these material changes without justification or cause.

89. Hycroft has unreasonably withheld payment of the reasonable value of the services, labor, materials, and equipment furnished by Jacobs at Hycroft's direction and instruction.

90. As a direct and proximate cause of Hycroft's material changes, Jacobs has suffered damages to be proven at trial. Therefore, Jacobs now seeks, in the alternative to its contractual claims, damages which in no event are less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

## SEVENTH CAUSE OF ACTION

### (Contract Abandonment)

91. Jacobs hereby incorporates paragraphs 1 through 90 as if fully set forth herein.

92. Following the issuance of the GSA and Work Orders, Hycroft materially and substantially altered the conditions upon which the contracts were formed and directed Jacobs to perform work inconsistent with the provisions contained in the contracts, including but not limited to

    a. Hycroft directed Jacobs to perform work at an inadequately prepared work site and without the necessary information, deliverables, equipment, materials, etc.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

13

      b. Hycroft and/or its engineering subcontractor, failed to supply timely and complete engineering drawings;

      c. When the engineering drawings were provided, there were numerous errors and conflicts, which resulted in rework that fell outside of Jacobs' scope of work, increased costs and delays;

      d. Jacobs was not provided with a schedule of engineering deliverables;

      e. Hycroft and/or its concrete subcontractor failed to complete the foundation work on time, delaying Jacobs work and resulting in increased costs;

      f. Hycroft failed to timely supply steel to the Merrill Crowe Project (indeed, the last steel deliverables were being made in September), resulting in increased costs and delays;

      g. Hycroft failed to procure equipment when promised, thereby causing significant Project delay and increased cost;

      h. Hycroft's contractor failed to timely supply pipe modules resulting in increased costs and delays;

      i. Hycroft's contractor failed to timely supply pipe spools resulting in increased costs and delays;

      j. Hycroft's contractor failed to timely complete construction of critical tanks (indeed, the tanks were not complete at the time Jacobs left the job site), resulting in increased costs and delays;

      k. Hycroft made numerous changes in scope resulting in increased costs and delays;

      l. The cable trays were not timely delivered resulting in increased costs and delays;

      m. Hycroft failed to provide the timely and sequential flow of numerous engineering and related technical documents and all pertinent critical path materials and equipment necessary for Jacobs to perform its scope of work;

      n. Hycroft expressly authorized, requested and directed Jacobs to perform additional work, employ additional labor, incur additional costs, and to "ramp up" work efforts.

93. Hycroft has unreasonably withheld payment of the reasonable value of the services, labor, materials, and equipment furnished by Jacobs at Hycroft's direction and instruction.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

14

94.     As a direct and proximate cause of Hycroft's material changes, Jacobs has suffered damages to be proven at trial.  Therefore, Jacobs now seeks, in the alternative to its contractual claims, damages which in no event are less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

### EIGHTH CAUSE OF ACTION

### (Foreclosure on Mechanics' Liens)

95.     Jacobs hereby incorporates paragraphs 1 through 94 as if fully set forth herein.

96.     As set forth above, Jacobs supplied labor, services, equipment and materials to improve the Merrill Crowe Facility at the Hycroft Mine.

97.     Jacobs' provision of labor, services, equipment and materials was for the benefit and improvement of the Merrill Crowe Facility and was done at the request and insistence of Hycroft.

98.     After deducting all just credits and offsets, the sum of **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76)**, plus interest, costs, and attorneys' fees is still due and owing to Jacobs for the labor, services, equipment and materials Jacobs provided.

99.     Hycroft has failed to make full payment due and owing to Jacobs for the labor, services, equipment and materials Jacobs provided.

100.    In order to secure its claim, Jacobs has perfected liens in the total amount of **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76)**, representing the unpaid amount for labor, services, equipment and materials provided by Jacobs to benefit Hycroft, including, without limitation, that work performed pursuant to the GSA and Work Orders.

101.    Jacobs has complied with the statutory procedures set forth in NRS 108.221, et seq., by:

(a) Timely recording verified Notices of Lien with the County Recorder for the Counties of Humboldt County, Nevada and Pershing County, Nevada pursuant to NRS 108.226.  A true and correct copy of the Notice Lien filed with the Humboldt County Records Office, Doc. 20135296 for improvements to parcel(s) located in Humboldt County, Assessor's Parcel Numbers 001-601-01, 001-601-02, 001-601-03, 001-601-04, 001-601-06, 001-601-08, 001-601-09, 001-601-10, 001-611-08, 001-611-11, and 001-561-001 is attached hereto as **Exhibit A**.  A true and correct copy of the Notice of Lien filed with the Pershing County Records

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

15

Office, Doc. 487531 for improvements to the parcel located in Pershing County, Assessor's Parcel Number 002-061-04 is attached hereto as **Exhibit B;**

(b)  Timely amending the Notices of Lien.  True and correct copies of the amendments are attached hereto as **Exhibit C**.

(c) Timely serving copies of the Notices of Lien on Hycroft pursuant to NRS 108.227; and

(d) Instituting this action to foreclose upon the liens within six (6) months from the recording of the Notices of Lien.

102.  Pursuant to the laws of the State of Nevada, particularly Chapter 108 of the Nevada Revised Statutes, Jacobs is entitled to recover the full amount of the liens, plus interest, costs, and reasonable attorneys' fees.

103.  Having complied with all relevant statutory provisions, Jacobs is entitled to:

(a) foreclosure on its liens;

(b) an Order from the Court that the sum of **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76),** plus interest and attorneys' fees is a lien upon the property; and

(c) an Order from the Court that the property shall be sold, as may be necessary, pursuant to the laws of the State of Nevada, and that the proceeds of said sale be applied to the payment of the amounts owed to Jacobs by Hycroft.

### NINTH CAUSE OF ACTION
### (Claim of Priority)

104.   Jacobs hereby incorporates paragraphs 1 through 103 as if fully set forth herein.

105.  On information and belief, there are other lien claimants who have recorded liens against the property.

106.  Jacobs' claims against the property are superior to any other lien claimant's rights therein.

### PRAYER FOR RELIEF

WHEREFORE, Jacobs prays for relief as follows:

1.  On the First Cause of Action, for general and compensatory damages according to proof at trial, but not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

2. On the Second Cause of Action, for general and compensatory according to proof at trial, but not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76)**.

3. On the Third Cause of Action, for general and compensatory according to proof at trial, but not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76),** and for and punitive damages of not more than three times the award of general compensatory damages.

4. On the Fourth Cause of Action, for an award of the reasonable value of services rendered according to proof at trial, but not less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

5. On the Fifth Cause of Action, for an award of restitution for the reasonable value of services rendered and for disgorgement of all profits gained by Hycroft, in amounts to be proven at trial, but in no event less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

6. On the Sixth Cause of Action, for the reasonable value of services rendered in amounts to be proven at trial, but in no event less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

7. On the Seventh Cause of Action, for the reasonable value of services rendered in amounts to be proven at trial, but in no event less than **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76).**

8. On the Eighth Cause of Action, for damages in the amount of **nine million, five hundred and six thousand, and fifty one dollars and seventy six cents ($9,506,051.76)** and for an order as a lien against the parcels identified in the Notices of Lien, senior and superior to any claim of right, title or interest in or to the real property, and that the real property be ordered sold by the Sheriffs of Humboldt County and Pershing County, Nevada, according to law, and that all proceeds of sale be applied to Jacobs' claim and to the cost of these proceedings and the sale of the real property.

9. On the Ninth Cause of Action, for a declaration that Jacobs has valid and enforceable mechanics' liens against the property, with priority over all other lien holders.

10. On all causes of action, for costs and interest incurred by Jacobs.

LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666

11. On all causes of action, for attorneys' fees, costs and interest incurred in preparing and recording the Notices of Lien and for attorneys' fees, costs and interest incurred in enforcing the Notices of Lien, including those incurred in connection with this action.

Dated this 4th of June, 2014.

LIONEL SAWYER & COLLINS

By: /s/ Allen J. Wilt, Esq.
Allen J. Wilt, Esq. (NSB 4798)
*awilt@lionelsawyer.com*
Jordan A. Davis, Esq. (NSB 12196)
jadavis@lionelsawyer.com
LIONEL SAWYER & COLLINS
1100 Bank of America Plaza
50 W. Liberty Street
Reno, Nevada 89501
(775) 788-8666 (Telephone)
(775) 788-8682 (Fax)

-and-

TERRY ROSS, CASB No. 58171
terry.ross@kyl.com
TARA B. VOSS, CASB No. 261967
tara.voss@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, P.O. Box 1730
Long Beach, California 90801-1730
Telephone: (562) 436-2000
Facsimile: (562) 436-7416
*(Pro hac vice to be filed)*

Attorneys for Plaintiff
LIONEL SAWYER & COLLINS
ATTORNEYS AT LAW
50 WEST LIBERTY STREET
SUITE 1100
RENO, NEVADA 89501
(775) 788-8666